

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

June 29, 2021

**Via ECF**
The Honorable District Judge John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **Santos, et al. v. West 4th Street Rest. Corp., et al.**
    **20-CV-1664 (JGK)**

Dear Judge Koeltl:

Our office represents the Felix Santos ("Santos") and Antonio Hernandez Cabrera[1] ("Cabrera") (collectively, the "Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for West 4th Street Rest. Corp. and George Isidoros Tsikis (collectively, the "Defendants")[2] seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached only with the aid of a qualified and experienced wage-and-hour mediator through the SDNY Mediation Program. The parties agreed to settle this matter for a total amount of $38,000.00, including attorneys' fees (which are addressed below).

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-336 as a basis for why the Court should approve the Agreement.

### I.  The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiffs' range of possible recovery:**

   **a. Plaintiffs' Position**

---

[1] Cabrera filed a "Consent to Join Collective Action" form on November 4, 2020 [Dkt. No. 20]
[2] Defendants are represented by Socrates Scott L. Nicholas, Esq.

Plaintiffs are two former dishwashers and food deliverers who were employed at Defendants' diner, Washington Square Diner, located at 150 West 4th Street, New York, New York 10012. In general, Plaintiffs alleged that they were not compensated proper minimum wage rates and overtime rates in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs also alleged that they were entitled to penalties under NYLL 195 for Defendants' failure to provide compliant wage notices and wage statements.

Santos alleged that he was employed by Defendants from in or around October 2018 until in or around November 2019. Santos alleged that he regularly worked six days per week and approximately nine hours per day for a total of fifty-four hours per week during his employment. Santos alleged that he was paid a flat weekly salary of $500.00 or $550.00 – depending on the time period – for all hours worked. As such, Santos alleged that he was not properly compensated for approximately 14 hours of overtime per week. Further, Santos alleged that his hourly rate – based on his weekly rate of pay – fell below the applicable New York State minimum wage for the entirety of his employment.

Cabrera alleged that he was employed by Defendants from in or around November 2012 until in or around June 2020. During the relevant statutory period commencing in October 2014, Cabrera alleged that he regularly worked six days per week and approximately nine hours per day for a total of fifty-four hours per week during his employment. Cabrera alleged that he sometimes worked in excess of fifty-four hours per week as well. Cabrera that he was paid a flat weekly salary ranging from $350.00 to $450.00 – depending on the time period – for all hours worked. As such, Cabrera alleged that he was not properly compensated for approximately 14 hours of overtime per week. Further, Santos alleged that his hourly rate – based on his weekly rate of pay – fell below the applicable New York State minimum wage from in or around January 2016 until June 2020.

However, prior to the parties' participation in the mediation, Defendants produced time and pay records, which contradicted Plaintiffs' claims. Although Plaintiffs maintained disagreements as to the accuracy of certain records, Plaintiffs understood the issues that these records could present at the time of trial.

After careful analysis of the records provided by Defendants, Plaintiffs still believed that they could recover up to $78,000.00 in unpaid wages, but recognized that would require that a fact-finder: i) fully accept all of their claims as to their dates of employment, hours worked each week, and pay received and ii) find that Defendants' records were not accurate. Although Plaintiffs believed they could establish their claims at the time of trial, Plaintiffs preferred a guaranteed settlement amount rather than risk a less favorable outcome at trial. Plaintiffs considered the records provided by Defendants' counsel, the strength of Defendants' potential witness testimony and their defenses in deciding to settle this matter for the agreed-upon amount of $38,000.00. The fact that the settlement amount would be paid in a lump sum upon Court approval also favored settlement over protracted litigation and the possibility of not having finality in this matter for at least another year.

### b. Defendants' Position

Despite Defendants' belief that a full presentation of its wage statements and receipts, and its employee notification records may serve to reduce Plaintiffs' claims to a figure below the Settlement Amount, Defendants recognize that there would be a risk of being liable for a greater award and accordingly prefer the certainty of the negotiated settlement.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $38,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after approximately five hours of negotiating before a qualified and experienced mediator appointed by the Court. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount given Defendants' documentation and record keeping practices. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows each Plaintiff to recover a considerable sum.

## 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

Had the parties not reached a settlement, both sides faced significant time and expenses conducting discovery. As the settlement was reached in the pre-discovery phase of litigation, resolution avoided the time and costs associated with sending written discovery demands and conducting both party and non-party depositions as well as appearing for additional conferences before the Court. The parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted multiple days following the close of discovery.

Both parties would have been required to appear at trial for multiple days. Plaintiffs would have incurred expenses preparing exhibits for trial, hiring court-certified interpreters and conducting the trial. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

**3. The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on many of their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of these risks favored the settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys' fees.

**4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement talks for approximately three months prior to the mediation. The parties exchanged records, revised their calculations, and held multiple, extensive conversations regarding a resolution between themselves and with the Court-appointed mediator prior to the mediaton. The parties attended a mediation through the SDNY Mediation Program lasting approximately five hours on May 12, 2021, which resulted in a mediator's proposal that was eventually accepted by both parties after careful consideration on May 20, 2021.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality clauses or releases of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

**5. The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### II.   Attorneys' Fees and Distribution to Plaintiffs

Plaintiffs and Defendants agreed to a global settlement of $38,000.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $24,764.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which factor in the length of each Plaintiff's employment, the hours worked by each Plaintiff, the pay received by each Plaintiff. The calculations also consider the records provided by Defendants' counsel and the individual defenses as to each Plaintiff's claims. Plaintiff Santos will recover $6,764.00 and Plaintiff Cabrera will recover $18,000.00 pursuant to the payment terms of the Agreement.

Plaintiffs' counsel respectfully requests $855.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint and the Amended Summons and Amended Complaint on Defendants: $455.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($37,145.00), or $12,381.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $13,236.00.

**Settlement Amount:** $38,000.00
**Attorneys' Expenses:** $855.00
**Settlement less Expenses:** $37,145.00
**Requested Attorneys' Fees:** $12,381.00 ($37,145.00 / 3)
**Total payable to Attorneys:** $13,236.00 ($12,381.00 + $855.00)
**Total payable to Plaintiffs:** $24,764.00 ($38,000.00 - $13,236.00)

Plaintiffs' attorneys and their clients have retainer agreements that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the matter for a year and a half. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit 2**. As explained in greater detail in the attached billing records, Plaintiffs' attorneys' fees as calculated using the lodestar method are **$17,892.50**. Plaintiffs' counsel spent a combined **50.6** attorney hours and **20.2** paralegal hours working on this matter from intake of Plaintiff Santos through finalizing the Agreement for the Court's review and approval. Plaintiffs' counsel believes that the work performed in this matter also supports the requested attorneys' fee award of one-third of the settlement.

### III.   Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of multiple mediations and a Settlement Conference before the Court, and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement

Agreement. We thank the Court for its consideration and remain available to provide any additional information.

                                                Respectfully submitted,

                                                *James O'Donnell*
                                                James O'Donnell, Esq.
                                                  *Attorney for Plaintiffs*