

# HELEN F. DALTON & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

June 29, 2021

**Via ECF**
The Honorable District Judge John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

*The Court finds that the Settlement Agreement, including the provision for attorney's fee and costs, is fair, reasonable, and adequate. The parties should promptly complete the settlement and submit a stipulation of discontinuance with prejudice. So ordered.*
*6/30/21    John G. Koeltl, U.S.D.J.*

Re: **Santos, et al. v. West 4th Street Rest. Corp., et al.**
**20-CV-1664 (JGK)**

Dear Judge Koeltl:

Our office represents the Felix Santos ("Santos") and Antonio Hernandez Cabrera[1] ("Cabrera") (collectively, the "Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for West 4th Street Rest. Corp. and George Isidoros Tsikis (collectively, the "Defendants")[2] seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached only with the aid of a qualified and experienced wage-and-hour mediator through the SDNY Mediation Program. The parties agreed to settle this matter for a total amount of $38,000.00, including attorneys' fees (which are addressed below).

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement.

## I. The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

### 1. The Plaintiffs' range of possible recovery:

#### a. Plaintiffs' Position

---

[1] Cabrera filed a "Consent to Join Collective Action" form on November 4, 2020 [Dkt. No. 20]
[2] Defendants are represented by Socrates Scott L. Nicholas, Esq.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/30/2021

Plaintiffs are two former dishwashers and food deliverers who were employed at Defendants' diner, Washington Square Diner, located at 150 West 4th Street, New York, New York 10012. In general, Plaintiffs alleged that they were not compensated proper minimum wage rates and overtime rates in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs also alleged that they were entitled to penalties under NYLL 195 for Defendants' failure to provide compliant wage notices and wage statements.

Santos alleged that he was employed by Defendants from in or around October 2018 until in or around November 2019. Santos alleged that he regularly worked six days per week and approximately nine hours per day for a total of fifty-four hours per week during his employment. Santos alleged that he was paid a flat weekly salary of $500.00 or $550.00 – depending on the time period – for all hours worked. As such, Santos alleged that he was not properly compensated for approximately 14 hours of overtime per week. Further, Santos alleged that his hourly rate – based on his weekly rate of pay – fell below the applicable New York State minimum wage for the entirety of his employment.

Cabrera alleged that he was employed by Defendants from in or around November 2012 until in or around June 2020. During the relevant statutory period commencing in October 2014, Cabrera alleged that he regularly worked six days per week and approximately nine hours per day for a total of fifty-four hours per week during his employment. Cabrera alleged that he sometimes worked in excess of fifty-four hours per week as well. Cabrera that he was paid a flat weekly salary ranging from $350.00 to $450.00 – depending on the time period – for all hours worked. As such, Cabrera alleged that he was not properly compensated for approximately 14 hours of overtime per week. Further, Santos alleged that his hourly rate – based on his weekly rate of pay – fell below the applicable New York State minimum wage from in or around January 2016 until June 2020.

However, prior to the parties' participation in the mediation, Defendants produced time and pay records, which contradicted Plaintiffs' claims. Although Plaintiffs maintained disagreements as to the accuracy of certain records, Plaintiffs understood the issues that these records could present at the time of trial.

After careful analysis of the records provided by Defendants, Plaintiffs still believed that they could recover up to $78,000.00 in unpaid wages, but recognized that would require that a fact-finder: i) fully accept all of their claims as to their dates of employment, hours worked each week, and pay received and ii) find that Defendants' records were not accurate. Although Plaintiffs believed they could establish their claims at the time of trial, Plaintiffs preferred a guaranteed settlement amount rather than risk a less favorable outcome at trial. Plaintiffs considered the records provided by Defendants' counsel, the strength of Defendants' potential witness testimony and their defenses in deciding to settle this matter for the agreed-upon amount of $38,000.00. The fact that the settlement amount would be paid in a lump sum upon Court approval also favored settlement over protracted litigation and the possibility of not having finality in this matter for at least another year.

### b. Defendants' Position

Despite Defendants' belief that a full presentation of its wage statements and receipts, and its employee notification records may serve to reduce Plaintiffs' claims to a figure below the Settlement Amount, Defendants recognize that there would be a risk of being liable for a greater award and accordingly prefer the certainty of the negotiated settlement.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.,* 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $38,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after approximately five hours of negotiating before a qualified and experienced mediator appointed by the Court. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount given Defendants' documentation and record keeping practices. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows each Plaintiff to recover a considerable sum.

### 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

Had the parties not reached a settlement, both sides faced significant time and expenses conducting discovery. As the settlement was reached in the pre-discovery phase of litigation, resolution avoided the time and costs associated with sending written discovery demands and conducting both party and non-party depositions as well as appearing for additional conferences before the Court. The parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted multiple days following the close of discovery.

Both parties would have been required to appear at trial for multiple days. Plaintiffs would have incurred expenses preparing exhibits for trial, hiring court-certified interpreters and conducting the trial. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

**3. The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on many of their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of these risks favored the settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys' fees.

**4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement talks for approximately three months prior to the mediation. The parties exchanged records, revised their calculations, and held multiple, extensive conversations regarding a resolution between themselves and with the Court-appointed mediator prior to the mediaton. The parties attended a mediation through the SDNY Mediation Program lasting approximately five hours on May 12, 2021, which resulted in a mediator's proposal that was eventually accepted by both parties after careful consideration on May 20, 2021.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality clauses or releases of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

**5. The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

**II.      Attorneys' Fees and Distribution to Plaintiffs**

Plaintiffs and Defendants agreed to a global settlement of $38,000.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $24,764.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which factor in the length of each Plaintiff's employment, the hours worked by each Plaintiff, the pay received by each Plaintiff. The calculations also consider the records provided by Defendants' counsel and the individual defenses as to each Plaintiff's claims. Plaintiff Santos will recover $6,764.00 and Plaintiff Cabrera will recover $18,000.00 pursuant to the payment terms of the Agreement.

Plaintiffs' counsel respectfully requests $855.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint and the Amended Summons and Amended Complaint on Defendants: $455.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($37,145.00), or $12,381.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $13,236.00.

> **Settlement Amount:** $38,000.00
> **Attorneys' Expenses:** $855.00
> **Settlement less Expenses:** $37,145.00
> **Requested Attorneys' Fees:** $12,381.00 ($37,145.00 / 3)
> **Total payable to Attorneys:** $13,236.00 ($12,381.00 + $855.00)
> **Total payable to Plaintiffs:** $24,764.00 ($38,000.00 - $13,236.00)

Plaintiffs' attorneys and their clients have retainer agreements that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.,* 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the matter for a year and a half. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit 2**. As explained in greater detail in the attached billing records, Plaintiffs' attorneys' fees as calculated using the lodestar method are **$17,892.50**. Plaintiffs' counsel spent a combined **50.6** attorney hours and **20.2** paralegal hours working on this matter from intake of Plaintiff Santos through finalizing the Agreement for the Court's review and approval. Plaintiffs' counsel believes that the work performed in this matter also supports the requested attorneys' fee award of one-third of the settlement.

### III.    Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of multiple mediations and a Settlement Conference before the Court, and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement

Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*

James O'Donnell, Esq.
*Attorney for Plaintiffs*

## AGREEMENT AND RELEASE

This Agreement and Release ("Agreement") sets forth the mutual understanding between **FELIX SANTOS ["Santos"] and ANTONIO HERNANDEZ CABRERA ["Hernandez"]** (hereinafter collectively referred to as "Plaintiffs") and **WEST 4TH STREET REST. CORP. d/b/a WASHINGTON SQUARE DINER and GEORGE ISIDOROS TSIKIS, as an individual** (hereinafter collectively referred to as "Defendants"), regarding Plaintiffs' employment and the settlement of any and all wage-and-hour-related claims that Plaintiffs have or may have against Defendants.

**WHEREAS,** Plaintiffs have commenced an action against Defendants in the Southern District of New York, United States District Court, bearing Docket No.: 20-CV-1664 [the "Action"], alleging wage and hour violations under the Federal Labor Standards Act and New York Labor Law ["Applicable Laws"].

**WHEREAS,** the Action was commenced by Santos as the named Plaintiff and a former employee of the corporate Defendant, with Hernandez joining the Action as an additional former employee of the corporate Defendant, with tandem claims relating to alleged underpaid wages and recordkeeping and notification violations under Applicable Laws;

**WHEREAS,** Defendants deny that they failed to pay Plaintiffs all wages owed to them;

**WHEREAS,** Defendants deny any violation of law or any liability to Plaintiffs;

**WHEREAS,** Plaintiffs and Defendants mutually desire to settle and resolve all disputes and differences between them, on the terms and conditions hereinafter set forth;

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, Defendants and Plaintiffs, having been represented by counsel, have independently concluded that it is in their respective best interests to do so, agree as follows:

### 1.   Payment

In lieu of incurring further litigation costs associated with defending the action commenced against them by Plaintiffs and in consideration for Plaintiffs' execution of this Agreement, which includes a discontinuance of the Action with prejudice and a release from all claims and liabilities asserted in the Action, Defendants agree to the following payment terms:

a.   Defendants shall cause Plaintiffs to be paid the gross sum of thirty-eight thousand dollars ($38,000.00), inclusive of attorneys' fees and costs ("Settlement Funds"), within seven (7) days of the Court's approval of this Agreement, payable as follows:

i. One certified or bank check in the amount of Eighteen Thousand Dollars ($18,000.00) made payable to Antonio Hernandez Cabrera.

ii. One certified or bank check in the amount of Six Thousand Seven Hundred and Sixty-Four Dollars ($6,764.00) made payable to Felix Santos.

1

iii. One certified or bank check in the amount of Thirteen Thousand Two Hundred Thirty-Six Dollars ($13,236.00) made payable to Helen F. Dalton & Associates, P.C., as attorneys for Plaintiffs.

b. The Settlement Funds will be provided to the Helen F. Dalton & Associates, P.C., 80-02 Kew Gardens Road, Suite 601, Kew Gardens, New York 11415.

c. Within five (5) business days of receiving the full payment listed in Paragraph 1(a), Plaintiffs will file a Stipulation of Discontinuance with prejudice for Court approval.

## 2.    Release

In consideration of the payments, benefits, agreements and other consideration to be provided by Defendants as described in the Agreement, Plaintiffs, their successors and assigns, **HEREBY RELEASES AND FOREVER DISCHARGES**, to the maximum extent permitted by law, Defendants, any insurers of Defendants, and Defendants' respective parent corporations, stockholders, subsidiaries, affiliates, divisions, successors and assigns, their respective current and former officers, owners, directors, employees, trustees, agents, whether as individuals or in their official capacity, and each of their respective successors and assigns, and attorneys of and from all or any manner of actions, causes and causes of action, claims and demands whatsoever at law or in equity ("claims"), which were alleged in the Complaint filed in the Action or referenced in the parties' Motion for Settlement Approval, specifically including Federal Labor Standards Act and New York Labor Law, and its associated regulations concerning unpaid wages, record-keeping violations and failure to provide proper wage statements and wage notices, which Plaintiffs ever had or now have against all Defendants.

## 3.    Attorneys' Fees

Except as otherwise stated, the parties expressly agree to bear their own attorneys' fees, costs and disbursements incurred in this litigation. Further, no party shall be responsible or liable for the payment of any attorneys' fees for the other party.

## 4.    Non-Admission

Defendants deny each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in the pleadings, proceeding, document or statement whatsoever by or on behalf of Plaintiffs against Defendants. This Agreement does not constitute an admission that Defendants have violated any law, committed any tort, breached or committed any wrongdoing whatsoever and Plaintiffs expressly acknowledge that Defendants continue to deny any wrongdoing arising out of Plaintiffs' employment and separation thereof.

## 5.    Non-Disparagement

Plaintiffs agree that they are prohibited from disparaging the Defendants in any manner likely to be harmful to them or to their business or personal reputations. Defendants in like manner agree not to disparage either of the Plaintiffs in any manner likely to be harmful to them or to their business or personal reputations. It is understood that notwithstanding the foregoing, neither of

2

the parties shall be restricted in their recitation of truthful statements regarding the other parties hereto.

**6.      Oral Modifications Prohibited**

This Agreement represents the entire agreement between Plaintiffs and Defendants with respect to Plaintiffs' employment with Defendants.   This Agreement cannot be amended, supplemented, or modified nor may any provision be waived, except by a written instrument executed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.

**7.      Enforcement of the Agreement**

This Agreement shall be governed by the law of the State of New York, without regard to the choice-of-law or conflicts-of-law principles of any jurisdiction.

**8.      Jurisdiction**

The parties respectfully request that this Court, the United States District Court for the Southern District of New York, retains jurisdiction to enforce the terms of this settlement until full payment of the Settlement Funds outlined in Paragraph 1 is made in its entirety or in the event of a default of this Agreement by either party.

**9.      Effective Date**

This Agreement and Release shall become effective immediately upon execution.

**10.     Counterparts and Facsimile Execution**

This Agreement may be executed on multiple counterparts, each of which shall be considered an original but all of which will constitute one (1) Agreement.  Counterparts executed and exchanged by facsimile or by electronic portable document format (pdf) via email, shall serve as originals and shall have binding effect upon the signatory parties.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

3

**IN WITNESS WHEREOF,** the entity and parties have executed this Agreement as of the date hereof.

**PLAINTIFFS:**

Feliksantos

Felix santos (Jun 22, 2021 11:30 EDT)

**FELIX SANTOS**

Date: 6/22/21

_____

**ANTONIO HERNANDEZ CABRERA**

Date:_____

**DEFENDANTS:**

**WEST 4ᵀᴴ STREET REST. CORP.**

George Tsikis

_George Tsikis_____, **Agent Authorized to sign on behalf of WEST 4ᵀᴴ STREET REST. CORP. d/b/a WASHINGTON SQUARE DINER**

Date: 6/28/2021

**GEORGE ISIDOROS TSIKIS, as an individual**

Date: 6/28/2021

4

**PLAINTIFFS:**

_____

**FELIX SANTOS**

**Date:**_____

**ANTONIO HERNANDEZ CABRERA**

**Date:** 6/17/21

**DEFENDANTS:**

**WEST 4ᵀᴴ STREET REST. CORP.**

George Tsikis _____, **Agent Authorized to sign on behalf of WEST 4ᵀᴴ STREET REST. CORP. d/b/a WASHINGTON SQUARE DINER**

**Date:** 06/28/2021

**GEORGE ISIDOROS TSIKIS, as an individual**

**Date:** 06/28/2021

4

**Billing Records for 20-CV-1664: Santos et al v. West 4th Street Rest. Corp**

| Date | Attorney | Time Spent (Hours) | Notes | Paralegal |
|---|---|---|---|---|
| 12/2/2019 | RA | 1.2 | Intake of client | P |
| 1/16/2020 | RA | 1.4 | Meet w/ client, more information on defendants | P |
| 2/11/2020 | RA | 1.8 | Perform calculations | |
| 2/13/2020 | RA | 1.7 | Research on defs, Draft complaint | |
| 2/25/2020 | RA | 2.1 | Review complaint with clients, edit and finalize complaint, file Complaint | P |
| 2/26/2020 | RA | 0.3 | Correct filing error - refile summons | |
| 2/27/2020 | RA | 0.1 | Sent Summons & Complaint to process server | |
| 4/23/2020 | RA | 0.1 | Review & save order | |
| 7/15/2020 | RA | 0.3 | Review affs of service, file on ECF, update to client | P |
| 7/22/2020 | RA | 0.1 | Review & save order | |
| 8/10/2020 | RA | 0.9 | Draft and file letter re: resposne to order to show cause | |
| 8/10/2020 | JO | 0.2 | Draft and file notice of appearance | |
| 9/3/2020 | RA | 0.4 | Call with Defendant re: service | |
| 9/21/2020 | RA | 0.6 | Call with client | P |
| 10/5/2020 | RA | 0.2 | Review, save, and calendar order | |
| 10/27/2020 | JO | 0.4 | Initial Conf held | |
| 10/27/2020 | RA | 0.2 | Review, save, and calendar order | |
| 10/29/2020 | RA | 0.8 | Draft and file Amended Complaint and Cover Sheet | |
| 11/2/2020 | RA | 1.5 | Intake of opt-in Plaintiff | P |
| 11/4/2020 | RA | 0.2 | File opt-in form | |
| 11/9/2020 | RA | 0.3 | Review and save deficiency notices | |
| 11/10/2020 | JO | 0.1 | Draft and file summons | |
| 11/12/2020 | RA | 0.1 | Sent Summons & Complaint to process server | |
| 12/23/2020 | RA | 0.1 | Draft and file summons | |
| 12/30/2020 | RA | 0.1 | Sent Summons & Complaint to process server | |
| 1/11/2021 | RA | 0.3 | Review affs of service, file on ECF, update to client | P |
| 1/11/2021 | RA | 0.2 | Draft and file opt-in form | |
| 1/27/2021 | RA | 0.4 | Call to Defs re: need to file answer | |
| 1/29/2021 | RA | 0.1 | Review and calendar order | |
| 2/22/2021 | JO | 0.2 | Spoke to Def re: OC | |
| 2/22/2021 | JO | 0.3 | Call with OC | |
| 2/23/2021 | RA | 0.1 | Review and calendar order | |
| 2/23/2021 | JO | 1.8 | Review file, pleadings, attend status conference and speak with OC after | |
| 3/3/2021 | JO | 0.5 | Email w/ OC, reviewed records provided | |
| 3/10/2021 | JO | 0.2 | Emails w/ mediator | |
| 3/24/2021 | JO | 0.8 | Calls/emails with mediator and OC | |
| 4/6/2021 | JO | 1.6 | Review file, records, pre-mediation call with OC and mediator | |
| 4/7/2021 | RA | 0.1 | Review and calendar order | |
| 4/8/2021 | JO | 0.2 | Emails with OC re: calcs | |
| 4/9/2021 | RA | 1.7 | Emails with OC; draft and file joint motion | |
| 4/14/2021 | JO | 0.1 | Review and save order | |

| Date | | Hours | Description | |
|---|---|---|---|---|
| 4/15/2021 | JO | 1.2 | Conference with clients | P |
| 4/27/2021 | JO | 1.5 | Calls with OC and pre-mediation call w/ OC and mediator | |
| 4/27/2021 | RA | 0.6 | Calls with clients for more information in light of records provided | P |
| 4/28/2021 | JO | 0.4 | Emails with mediator | |
| 4/30/2021 | JO | 0.1 | scheduled mediation | |
| 5/5/2021 | JO | 0.5 | Call with OC | |
| 5/5/2021 | JO | 0.3 | Call with mediator | |
| 5/7/2021 | JO | 0.7 | Call with OC | |
| 5/10/2021 | JO | 2.2 | Drafted ex parte mediation statement and emailed to mediator with calcs | |
| 5/11/2021 | JO | 1.4 | Calls/emails w/ OC; reviewed records, revised calculations, discussed settlement | |
| 5/12/2021 | JO | 0.1 | Received mediation log-in information, entered and shared info | |
| 5/12/2021 | JO | 5.8 | Conference w/ clients pre-mediation and attend mediation | P |
| 5/14/2021 | JO | 0.3 | Received and reviewed mediator's proposal | |
| 5/19/2021 | JO | 1 | Calls with clients re: mediator's proposal, answered questions about options | P |
| 5/20/2021 | JO | 0.5 | Email re: acceptance of proposal, calls w/ clients advising of settlement | |
| 5/25/2021 | JO | 0.2 | Emails re: filing date of agreement/motion | |
| 6/4/2021 | RA | 0.5 | Draft and file motion to ext time to file | |
| 6/7/2021 | JO | 0.1 | Review and save order | |
| 6/15/2021 | JO | 2.2 | Calculated settlement allocations; calls w/ cts, drafted& emailed settlement agreement | P |
| 6/16/2021 | JO | 0.8 | Emails w/ OC, received revisions, reviewed, made changes/finalized agreement | |
| 6/17/2021 | JO | 1.8 | Drafted motion for approval, emailed to OC | |
| 6/17/2021 | RA | 1 | Meet w/ client Cabrera, review, translate agreement, obtain signature | P |
| 6/22/2021 | JO | 0.5 | Recvd and reviewed revisions to motion, revised motion for approval | |
| 6/22/2021 | RA | 1 | Zoom conf w/ client Santos, review, translate agreement, obtain signature | P |
| 6/29/2021 | JO | 0.5 | Recvd signed agreement from defs, minor revisions/finalize motion, prepare for filing | |

**Total Hours**

| | | | |
|---|---|---|---|
| RA | 21.3 | * $425.00 = $ | $ 9,052.50 |
| JO | 29.3 | * $250.00 = $ | $ 7,325.00 |
| Paralegal | 20.2 | * $75.00 = $ | $ 1,515.00 |
| | Total: $ | | 17,892.50 |

**Expenses Incurred**

| Date | Cost | Note |
|---|---|---|
| 2/25/2020 | $400.00 | SDNY Filing Fee |
| 5/6/2020 | $455.00 | Cost of Service on Defendants by PMLegal (Complaint and Amended Complaint) |
| | $855.00 | |

**Attorney Qualifications and Billing Rates for Plaintiffs' Counsel**

Roman Avshalumov has been an attorney for fourteen years, and is admitted to practice in New York and New Jersey, as well as the EDNY, SDNY, and District of New Jersey. He has represented both plaintiffs and defendants in labor law actions. Mr. Avshalumov has tried numerous labor/employment cases, and settled over a hundred more. He has also tried over 50 personal injury and employment actions. Mr. Avshalumov is the senior managing attorney at Helen F. Dalton & Associates, P.C., where he oversees all litigation at the firm, and has done so for the last ten years. Mr. Avshalumov currently bills at $425.00 per hour, which is standard for attorneys with his level of experience. Throughout this case, Mr. Avshalumov spent approximately **21.3 hours** on this case. Accordingly, Mr. Avshalumov reasonably would charge **$9,052.50** for his work performed in these matters.

James O'Donnell, has been an attorney for six years, and is admitted to practice in New York as well as the EDNY and SDNY. Mr. O'Donnell is the head of the labor law practice group at Helen F. Dalton & Associates, P.C. and oversees all labor and employment matters and litigation at the firm. Mr. O'Donnell has exclusively worked on employment matters during his five years at the firm. He has appeared on hundreds of FLSA matters in the Second Circuit, including collective actions and class actions, and has settled or otherwise resolved over two hundred fifty wage-and-hour cases in New York state and federal courts during his employment. Mr. O'Donnell currently bills at $250.00 per hour, which is standard for attorneys with his level of experience. Throughout this case, Mr. O'Donnell spent approximately **29.3 hours** on this case. Accordingly, Mr. O'Donnell reasonably would charge **$7,325.00** for his work performed in this matter.

Lastly, Plaintiffs' counsel incurred approximately **20.2 hours** of bilingual paralegal services provided at $75.00 per hour, for approximately **$1,515.00** in total.

As such, Plaintiff's counsel has incurred approximately **$17,892.50** in attorneys' fees using the Lodestar Method, not including expenses associated with matter.